# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ARTEM IGOSHEV, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. ELH-17-1363 |
| NATIONAL SECURITY AGENCY/ Central Security Service | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION AND IN OPPOSITON TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff submitted a FOIA request to NSA seeking (1) names of satellites with an indication of the country to which each belongs; (2) a description of the way in which the satellites are used, i.e., how they are used; (3) the full name of the person or people against whom the satellites were used with an indication of the period of time, especially with respect to the Plaintiff. As set forth in defendant's motion (s*ee* Defendant's Memorandum of Law, ECF No. 15-2 at 11), NSA properly determined that the information requested by the Plaintiff was of a nature currently and properly classified, as set forth in Sections 1.4(c) and (g) of Executive Order ("E.O.") 13526 (*See* Sherman Declaration at ¶¶ 20 & 21); and further that it was unable to confirm the existence or nonexistence of the intelligence information as requested by Plaintiff because it is properly exempt from disclosure under FOIA Exemptions 1 and 3 (*See* Sherman Declaration at ¶¶ 22-27, 29-34). In opposition, plaintiff argues that if the information sought is evidence of a crime, then it must be disclosed. However, as discussed below, this is incorrect as a matter of law.

## ARGUMENT IN REPLY AND OPPOSTION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

In opposition to defendant's motion for summary judgment, Plaintiff states that his FOIA request is an attempt to discover evidence of crime against himself, and as such, argues that § 1.7 of E.O.13526 precludes the application of the exemptions cited by the Defendant under FOIA. (ECF No. 18 at 3). Similarly, he seeks partial summary judgment on a matter of law on the same grounds. (ECF No. 17 at 2-5). Plaintiff apparently seek this information to support a complaint[1] against Russia in the European Court of Human Rights. (See Amended Compliant, ECF NO. 8 at ¶ 3). However, while plaintiff characterizes § 1.7 of E.O.13526 as prohibiting the exemption of "crime information," the precise language of the relevant section states: "[i]n no case shall information be classified, continued to be maintained as classified, or fail to be declassified in order to: (1) conceal violations of law, inefficiencies, or administrative error." E.O.13526 § 1.7. The phrase "in order to" demonstrates that the Agency may not improperly classify material for the *purpose* of concealing a violation of law. It does not, as plaintiff suggests, require the declassification or disclosure of otherwise properly classified information because that information happens to be evidence of an alleged crime by Russia.

Notably, plaintiff does not allege that the NSA issued plaintiff a *Glomar* response to his FOIA request because it was motivated to conceal a violation of law. Such an allegation, even if made, has been expressly denied. *See* Sherman Declaration at ¶ 26. Nor does plaintiff allege any facts to show why the NSA would be motivated to conceal evidence, if any evidence even exists, of a crime committed against plaintiff by Russia. However, even if plaintiff made such a claim,

---

[1] Whether or not plaintiff actually has a complaint against Russian pending before the European Court of Human Rights is unknown. However, as set forth herein, the truth of the assertion is immaterial.

speculative assertions about unspecified crimes allegedly caused by a foreign government is insufficient to overcome an Agency's clearly articulated legitimate basis for classifying information as exempt. *See similarly Elec. Frontier Found. v. DOJ*, 57 F. Supp. 3d 54, 60-61 (D.D.C. 2014)(rejecting argument that documents were classified for an improper purpose, such as to shield embarrassing information from the public); *Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 509-510 (S.D.N.Y. 2010)(rejecting plaintiff's suggestion that the Court should conclude that the CIA classified documents to conceal alleged illegal activity); *ACLU v. DOD*, 664 F. Supp. 2d 72, 78 (D.D.C. 2009)(rejecting argument that agency withheld information to conceal violations of the law). Moreover, in instances where an Agency has demonstrated that there are legitimate reasons to classify certain information as exempt, the Court need not address allegations that an improper motive also played a role. Indeed, in *ACLU v. United States DOD*, 628 F.3d 612 (D.C. Cir. 2011), the ACLU sought information concerning certain detainees held at Guantanamo. In response, the CIA withheld all information relating to the capture, detention, and interrogation of the detainees pursuant to FOIA exemptions 1 and 3, identifying five reasons why the disclosure of the withheld information might harm national security. *Id*. One of the identified reasons was that the disclosure would provide al Qaeda with material for propaganda. *Id*. The ACLU challenged the propaganda reason, arguing the only reason that such information could be used for propaganda was because it allegedly would show detainee abuse, which, ACLU argued, would be "embarrassing to the United States and possibly violations of law." *Id*. As plaintiff does here, the ACLU cited to the applicable executive order that prohibits the classification of "information to 'conceal violations of law' or to 'prevent embarrassment to a person, organization, or agency.'" *Id.* The Court found it unnecessary to address this argument however, because the CIA was able to demonstrate four other reasons why the public disclosure of the withheld information reasonably

could be expected to result in damage to national security, and thus, the fact that the exemption could also prevent embarrassment was immaterial. *Id*.

As set forth in detail in the Sherman Declaration, merely acknowledging the existence or nonexistence of responsive records on particular individuals or organizations that may be subject to surveillance would provide our adversaries with critical information about the capabilities and limitations of NSA, such as the types of communications that may be susceptible to NSA detection. *See* Sherman Declaration at ¶ 23. Confirmation by NSA that a person's activities are not of foreign intelligence interest, or that NSA is unsuccessful in collecting foreign intelligence information regarding their activities on a case-by-case basis would allow our adversaries to accumulate information and draw conclusions about NSA's technical capabilities, sources, and methods. *See* Sherman Declaration at ¶ 23. As such, despite plaintiff's arguments and assertion—that his particular case is unique; that disclosure of the information he requested is somehow supported as a matter of FOIA policy; and/or that release of the requested information standing in isolation will not harm national security—the NSA's duty to respond consistently among all requesters and with the national security in mind is not altered. Indeed, the NSA cannot respond to each case in isolation, but must assume that our adversaries may examine all released information together. *See* Sherman Declaration at ¶ ¶ 24-25. Additionally, Exemption 3 provides a separate and distinct basis to uphold the NSA's determination, as the requested disclosure seeks information protected by three separate statutes which protect the fragile nature of NSA's SIGINT efforts, including but not limited to the existence and depth of signals intelligence-related successes, weaknesses, and exploitation techniques. *See* Sherman Declaration at ¶ 29.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in the Sherman Declaration and in defendant's motion for summary judgment, defendant respectfully requests that this Court dismiss the complaint, dismiss plaintiff's motion for partial summary judgment, and find that NSA's response to plaintiff's FOIA request was proper in all respects.

Respectfully submitted,

Stephen M. Schenning
Acting United States Attorney

_____/s/_____
Jane E. Andersen (Bar No. 802834)
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201
Telephone: (410) 209-4892
Fax: (410) 962-2310
Jane.Andersen@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 30, 2017, a copy of the forgoing Memorandum of Law filed herewith was caused to be served on plaintiff by first-class international pre-paid postage to:

**Igoshev Artem**
Lenigradski, house 79(B) #18
Vologda, Vologodskai Oblast
Russian Federation 160017

And via email at aaron.igoshev2013@gmail.com

                                              _____/s/_____
                                              Jane E. Andersen
                                              Assistant United States Attorney