IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARTEM IGOSHEV,

    *Plaintiff*,

    v.

NATIONAL SECURITY AGENCY/
CENTRAL SECURITY SERVICE,

    *Defendant*.

Civil Action No. ELH-17-1363

## MEMORANDUM OPINION

Self-represented plaintiff Artem Igoshev, a Russian national, has sued the National Security Agency/Central Security Service (the "NSA") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(B), seeking judicial review of the NSA's denial of his FOIA request. ECF 8 (Amended Complaint).[1] At issue is plaintiff's FOIA request to the NSA, submitted on October 3, 2014, seeking (1) names of satellites with an indication of the country to which each belongs; (2) a description of the way in which the satellites are used; and (3) the full name of the person or people against whom the satellites were used with an indication of the period of time, especially with respect to plaintiff. *See* ECF 15-1 at 25.

Both parties have filed dispositive motions concerning the issue of whether plaintiff's request was properly denied. The NSA filed a motion to dismiss or, in the alternative, for summary judgment (ECF 15), supported by a memorandum of law (ECF 15-2) (collectively, "NSA Motion") and several exhibits, including the Declaration of David J. Sherman, Chief of Strategy, Plans & Policy at the NSA. ECF 15-1 ("Sherman Declaration"). Although the NSA Motion is styled as one to dismiss, "pursuant to Fed. R. Civ. P. 12(6) [sic]," or for summary

---

[1] The NSA's records are situated in Maryland (*see* ECF 15-1 at 75), giving rise to jurisdiction in this district. 5 U.S.C. § 552(a)(4)(B).

judgment under Fed. R. Civ. P. 56, it contains no discussion of a motion to dismiss. Therefore, I shall construe the NSA Motion as one for summary judgment.

Plaintiff opposes the NSA Motion (ECF 18, "Opposition"), and filed a cross-motion for summary judgment. ECF 17 ("Plaintiff's Motion"). The NSA filed a combined opposition to Plaintiff's Motion and replied in support of the NSA Motion. ECF 19 ("NSA Reply"). Thereafter, plaintiff replied. ECF 23.

No hearing is necessary to resolve the motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the NSA Motion and I shall deny Plaintiff's Motion.

## I.      Factual Background

As noted, plaintiff submitted a FOIA request to the NSA on October 3, 2014. ECF 8, ¶ 1. The substance of the request was written in Russian. *See* ECF 15-1, ¶ 11; *see also* ECF 15-1 at 18-19 (email FOIA request from plaintiff, dated October 3, 2014). The NSA interpreted plaintiff's request as seeking three items: "(1) names of satellites with an indication of the country to which each belongs; (2) a description of the way in which the satellites are used . . . ; (3) the full name of the person or people against whom the satellites were used with an indication of the period of time, especially with respect to the Plaintiff." ECF 15-1, ¶ 11.

The NSA responded to plaintiff's request on October 7, 2014, and informed plaintiff that the request was denied on the basis that the information was classified in accordance with Executive Order ("E.O.") 13526, and was therefore exempt from disclosure under FOIA. *Id.* ¶ 12. Further, the NSA stated that "the existence or nonexistence of the same information was also protected from release by statute, and thus also exempt from release. . . ." *Id.* As a result, the NSA refused to confirm or deny that it possessed such records. *Id.*; *id.* ¶ 18. Igoshev was also

informed of his right to appeal the determination. *Id.* The decision neither to confirm nor deny the existence of information requested is known as a "Glomar response."[2]

On January 12, 2015, the NSA received a letter in a foreign language from plaintiff, which it interpreted to be an appeal. *Id.* ¶ 14. About two years later, on January 12, 2017, the NSA denied the appeal on the basis of the same two exemptions. *Id.* ¶ 17. This suit followed. ECF 1 (Complaint).[3]

Plaintiff's Amended Complaint appears to suggest that the information he seeks will reveal the nature of some crime being committed against him by the Russian government. *See, e.g.*, ECF 8, ¶ 3. He alleges that he "had planned to employ the received information for a trial in the European Court of Human Rights following my complaint against Russia." *Id.* Plaintiff further alleges, *id.* ¶ 5: "The information requested by me indubitably evidences violation of the International Covenant on Civil and Political Rights and the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment . . . ." Plaintiff also refers to "The Nuremburg Code" (*id.* ¶ 10) and the international norm of *jus cogens*. *Id.* ¶ 9.[4]

---

[2] The term is named for a ship called the Glomar Explorer, which was rumored to be operated by the CIA. *See Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1011 (D.C. Cir. 1976). A journalist filed a FOIA request for records related to the ship, and the CIA rejected the request "on the ground that existence or nonexistence of the requested records was itself a classified fact exempt from disclosure under Sections (b)(1) and (3) of FOIA." *Id.* at 1012.

[3] Plaintiff's filings in this Court have been in English. However, most of his correspondence with the NSA, attached to the Sherman Declaration (ECF 15-1), appears to be in Russian.

[4] Black's Law Dictionary defines *jus cogens* as "[a] mandatory or peremptory norm of general international law accepted and recognized by the international community as a norm from which no derogation is permitted." Jus Cogens, *Black's Law Dictionary* (10th ed. 2014).

## II.     Standard of Review

### A.

As noted, the NSA has moved to dismiss or, alternatively, for summary judgment.  ECF 15.  A motion styled in the alternative, to dismiss or for summary judgment, implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure.  *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).  Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."  *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d).  If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  But when, as here, the movant expressly captions its motion "in the alternative," as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious."  *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it."  5C Alan Wright & Arthur Miller et al., *Federal Practice & Procedure* § 1366 (3d ed.).  This discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Id*.  In general, courts are guided by whether consideration of extraneous

material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.*

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours & Co. v. Kolan Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011); *see Putney v. Likin*, 656 F. App'x 632, 638-640 (4th Cir. 2016) (per curiam); *McCray v. Maryland Dep't of Transp.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)); *see also Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x 552, 561 (4th Cir. 2015).

To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing the affidavit requirement of former Rule 56(f)). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008) (per curiam).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party who fails to file a Rule 56(d) affidavit does so at his peril, because

"'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961); *see also Dave & Buster's, Inc.*, 616 F. App'x at 561. But, the nonmoving party's failure to file a Rule 56(d) affidavit does not obligate a court to issue a summary judgment ruling that is obviously premature.

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Harrods*, 302 F.3d at 244 (quoting *Evans*, 80 F.3d at 961). According to the Fourth Circuit, the failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is pre-mature and that more discovery is necessary," and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id*. at 244-45 (quoting *First Chicago Int'l v. United Exchange Co., LTD*, 836 F.2d 1375, 1380-81 (D.C. Cir. 1988)).

Plaintiff has not filed a Rule 56(d) affidavit. Nor does it appear that discovery would aid the decisional process. Indeed, plaintiff has filed his own motion for summary judgment. *See* ECF 17. Accordingly, I am satisfied that it is appropriate to construe the NSA Motion as one for summary judgment, as it will facilitate resolution of this case.

**B.**

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S.

317, 322-24 (1986); *see also Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

The Supreme Court has clarified that not every factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 514 U.S. 1042 (2004); *see also Celotex*, 477 U.S. at 322-24. Moreover, in resolving a summary judgment motion, a court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd.*,

475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013). However, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

The judge's "function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Inv., LLC*, 828 F.3d 208, 216 (4th Cir 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007). Moreover, in the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

When, as here, the parties have filed cross-motions for summary judgment, the court must consider "each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir. 2003) (citation omitted); *see Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). Simply because both parties have filed for summary judgment does not mean that summary judgment to one party or another is necessarily appropriate. "Both motions must be denied if the court finds

that there is a genuine issue of material fact. But if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Wright, Miller & Kane, *Federal Practice & Procedure* § 2720, at 336-37 (3d ed. 1998, 2012 Supp.).

The Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard[]' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Va. Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (per curiam) (same). Nevertheless, a plaintiff must still raise a genuine dispute of material fact to survive summary judgment. *See Bouchat*, 346 F.3d at 522.

### III. Discussion

### A. FOIA and Exemptions

"The Freedom of Information Act was enacted to facilitate public access to Government documents," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (citation omitted), and to vindicate the public's right to know "what their government is up to." *U.S. Dep't of Justice v Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quotation marks omitted); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1087-88 (D.C. Cir. 2014); *Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 193 (2d Cir. 2012); *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 694 (9th Cir. 2012). Consistent with this objective, FOIA requires that "each [federal] agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules

stating the time, place, fees (if any) and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

"FOIA requires federal agencies to disclose agency records unless they may be withheld pursuant to one of nine enumerated exemptions listed in 5 U.S.C. § 552(b) (2012)." *Havemann v. Colvin*, 629 F. App'x 537, 539 (4th Cir. 2015). The NSA invokes two of those exemptions here: Exemption 1, under 5 U.S.C. § 552(b)(1), and Exemption 3, under 5 U.S.C. § 552(b)(3). *See* ECF 15-2 at 1-2.

## 1. Exemption 1

Under Exemption 1, 5 U.S.C. § 552(b)(1), "an agency need not make documents available to the public that are '(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.'" *Al Fayed v. United States*, 210 F.3d 421, 423 (4th Cir. 2000) (quoting 5 U.S.C. § 552(b)(1)).

Executive Order Number 13526, 75 FR 707 (Dec. 29, 2009) establishes the classification guidelines. Section 1.4 of that Executive Order specifies, *id.*: "Information shall not be considered for classification unless its unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security . . . ." Additionally, the information must pertain to at least one of eight categories, including intelligence activities, intelligence sources or methods, or cryptology; or vulnerabilities or capabilities of systems, installations, infrastructures, projects, plans, or protection services relating to the national security. *Id.* at sec. 1.4(c), (g). "An agency may invoke this exemption only if it complies with classification procedures established by the relevant executive order and withholds only such

material as conforms to the order's substantive criteria for classification." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 214 (D.C. Cir. 1987).

### 2. Exemption 3

Exemption 3, 5 U.S.C. § 552(b)(3), provides that disclosure under FOIA is not required if the information sought is "specifically exempted from disclosure by statute," so long as that statute requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or establishes particular criteria for withholding or refers to particular types of matters to be withheld. *Id.*

For Exemption 3 to apply, "the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 350 (D.C. Cir. 1978).

### B. Analysis

District courts have jurisdiction to "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Review of records requests are *de novo*. *Id.*

In FOIA cases, a district court need not allow full discovery before granting summary judgment. *Simmons v. U.S. Dep't of Justice*, 796 F.2d 709, 711 (4th Cir. 1986) Instead, it may grant summary judgment on the basis of a declaration or affidavit from the agency explaining its decision, so long as the agency's affidavits are relatively detailed and nonconclusory. *Id.* at 711-12 (citations omitted). Furthermore, "[i]n judging agency decisions and affidavits in the area of national security . . . , courts have given substantial weight to the expertise of the agencies charged with determining what information the government may properly release." *Id.* at 711.

### 1. Applicability of Exemption 1

The NSA contends that the information sought by plaintiff falls squarely within Exemption 1. It argues, ECF 15-2 at 12-13: "Confirming the existence or nonexistence of responsive records would disclose information that is currently and properly classified TOP SECRET pursuant to Section 1.2(a)(1) of E.O. 13526 because such a positive or negative response reasonably could be expected to cause exceptionally grave damage to national security."

The Sherman Declaration contains an averment to the same effect, and adds, ECF 15-1, ¶ 22: "Any disclosure of this information could be reasonably expected to harm national security because it would reveal NSA capabilities, activities, and intelligence priorities . . . and affect NSA's ability to counter threats to the national security of the United States." Sherman also declared that the same reasoning applied to NSA's decision not to release information on particular individuals or organizations that may be subject to surveillance, such as plaintiff, because this information "would provide [the United States'] adversaries with critical information about the capabilities and limitations of NSA, such as the type of communications that may be susceptible to NSA detection." *Id.* ¶ 23.

In my view, the Sherman Declaration is sufficiently detailed and nonconclusory to support a grant of summary judgment on this basis.

In his Opposition, plaintiff points to "some curiosities" in the Sherman Declaration. ECF 18 at 5. In particular, he observes that in the letter from Sherman denying plaintiff's appeal, dated January 12, 2017 (ECF 15-1 at 74-75), Sherman stated that to confirm or deny the existence of the information sought "could harm our national security and severely undermine NSA/CSS activities in general." *Id.* at 74. However, in the Sherman Declaration, confirmation

or denial of the existence of responsive records "could be expected to cause exceptionally grave damage to national security." ECF 15-1, ¶ 22. From this discrepancy in wording, plaintiff infers that, after the filing of his Complaint, the classification level of the information was elevated. ECF 18 at 5. Plaintiff's observation of this semantic discrepancy, however perceptive, is of no legal consequence. Put another way, the Sherman Declaration's increased specificity has no bearing on the question at issue.

Additionally, plaintiff asserts that, because the information he seeks would reveal a violation of the law, it cannot properly be classified under Section 1.7 of E.O. 13526. *See* ECF 18 at 7-8. Section 1.7 provides, *inter alia*: "In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to . . . conceal violations of law . . . ." Plaintiff argues, ECF 18 at 7-8: "As a result of classification a crime is concealed and nothing is known about it, this is simple cause and effect relationship. . . . The law-breakers can escape from justice but this shouldn't be implied in the law."

In reply, the NSA emphasizes that "plaintiff does not allege that the NSA issued plaintiff a *Glomar* response to his FOIA request because it was motivated to conceal a violation of law." ECF 19 at 2. And, it adds, "even if plaintiff made such a claim, speculative assertions about unspecified crimes . . . [are] insufficient to overcome an Agency's clearly articulated legitimate basis for classifying information as exempt." *Id.* at 2-3. As several courts of appeals have held, "an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation and internal quotation marks omitted); *see also Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 774 (9th Cir. 2015); *Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 73 (2d Cir. 2009).

To the extent that plaintiff has alleged that the NSA has withheld the requested information *with the purpose of* concealing a crime (*see, e.g.*, ECF 8, ¶¶ 10, 12), those allegations are conclusory. Plaintiff has offered no factual basis to support this assertion. As a result, I have no reason to believe that the NSA has classified the requested information for an improper purpose under Section 1.7 of the Executive Order.

Insofar as it is relevant, I also find that the NSA's use of a Glomar response—the refusal to confirm or deny the existence of responsive records—to be proper in this case. As stated in the Sherman Declaration, ECF 15-1, ¶ 22, confirming the existence or nonexistence of responsive records would reveal classified information.

Plaintiff asks, ECF 18 at 6: "If the whole information cannot be disclosed for some reason, then it is possible to produce the unclassified portions on my request. . . . There exists a possibility to issue for me the data received from the 'targets' currently used-up, since the hazard of harm featured above in [sic] no longer hanging over the national security. . . ." However, plaintiff's speculation that some of the information he seeks may pertain to inactive "targets" is irrelevant. In my view, the Sherman Declaration is sufficiently specific and nonconclusory, and therefore I shall not "conduct a detailed inquiry to decide whether it agrees with the agency's opinions." *Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 148 (D.C. Cir. 1980).

Because the Sherman Declaration adequately demonstrates that the information sought by plaintiff is properly classified, I agree with the NSA that its denial of plaintiff's FOIA request falls under Exemption 1.

### 2. Applicability of Exemption 3

In the alternative, the NSA also maintains that Exemption 3 supports its denial of plaintiff's FOIA request. ECF 15-2 at 15. According to the NSA, three separate statutes protect

the requested information from disclosure: Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605; the Espionage Act, 18 U.S.C. § 798; and the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024. *See* ECF 15-2 at 15-17. Because I find that the request is covered by at least one of the statutes, I need not consider the other two.

The NSA first cites Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605. It states, in relevant part: "[N]othing in this chapter or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof . . . ." Notably, "Section 6 qualifies as an Exemption 3 statute, and provides absolute protection . . . ." *Larson*, 565 F.3d at 868 (citations omitted).

The Sherman Declaration affirms that the information requested by plaintiff concerns the NSA's sources and methods of obtaining signals intelligence, and is thus "squarely within the scope" of this statute. ECF 15-1, ¶¶ 29-30. I agree, especially given that plaintiff has requested information about the "person or people against whom the satellites were used." *Id.* ¶ 11.

Therefore, I am satisfied that the NSA's denial of plaintiff's FOIA request was appropriate under Exemption 3.

## C. *Jus Cogens* and Plaintiff's Motion for Summary Judgment

Plaintiff's argument for the disclosure of the information he seeks rests largely on the principle of *jus cogens*. He asserts that because the "prohibition on torture [is] a norm of *jus cogens*[,] [c]oncealment of crimes and torturing criminals using National Security Agency Act of 1959 under the FOIA cannot be legally justified, as it would stand in the way to exposure of

crimes with *jus cogens* status and obstruct the USA to live up the [sic] commitments under the international treaties."  ECF 17 at 5.

Plaintiff's cause may be a sympathetic one, but he is not unique in this respect.  *See, e.g.*, *Larson*, 565 F.3d at 861 (seeking information on violence committed against plaintiffs' relatives in Guatamala); *Am. Civil Liberties Union v. U.S. Dep't of Def.*, 628 F.3d 612, 617 (D.C. Cir. 2011) (seeking information about detainees at Guantanamo Bay).  The invocation of *jus cogens* cannot alter the text of FOIA, which contains the applicable exemptions.  And, courts have held that "that Congress can provide immunity to a foreign government for its *jus cogens* violations, even when such immunity is inconsistent with principles of international law."  *Saleh v. Bush*, 848 F.3d 880, 893 (9th Cir. 2017) (citing *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 718 (9th Cir. 1992)).

Congress has spoken clearly.  Accordingly, plaintiff's appeals to international norms to procure the information he desires are unavailing.

### IV.    Conclusion

For the reasons stated above, I shall GRANT the NSA's motion for summary judgment, and I shall DENY plaintiff's motion for summary judgment.  An Order follows, consistent with this Memorandum Opinion.


Date:  May 1, 2018                                          _____/s/_____
                                                                          Ellen Lipton Hollander
                                                                          United States District Judge